# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

Golf Village North LLC, *et al.*,

    **Plaintiffs,**

    v.
                                         **Case No. 2:18-cv-371**

The City of Powell, Ohio, *et al.*,
                                             **Judge Michael H. Watson**

    **Defendants.**
                                             **Magistrate Judge Deavers**

## OPINION AND ORDER

Golf Village North LLC and Triangle Properties, Inc. (together, "Plaintiffs" or "Golf Village") move for a temporary restraining order ("TRO"), preliminary injunction, and permanent injunction against Defendants the City of Powell, Ohio (the "City"), David Betz in his official capacity as the City's Director of Development (the "Zoning Administrator"), and their agents (together, "Defendants"). Mot., ECF No. 2 ("Motion"). For the following reasons, Plaintiffs' Motion is **GRANTED IN PART and DENIED IN PART**. Specifically, the Court **GRANTS** Plaintiffs' request for a preliminary injunction, **DENIES AS MOOT** Plaintiffs' request for a TRO, and **DENIES** Plaintiffs' request for a permanent injunction.

### I.    FACTS

#### A. Background

In the late 1990s, Plaintiffs acquired more than 900 acres of property in Delaware County to develop a planned community known as the Golf Village

Community. Plaintiffs seek to develop a residential hotel on a parcel of that property known as Subarea G (the "Hotel Property").

In 2004, Golf Village prepared a plat (the "Final Plat") for the Hotel Property, which the City approved in September 2004. Ver. Compl. ¶ 29, ECF No. 1. The Final Plat indicates that Lot 3155, a parcel located adjacent to the Hotel Property's east side, would be dedicated to the City for use as a public park. *Id*. at ¶ 30; Ex. C, ECF No. 1-3. The Final Plat also identifies two private roads—Sheridan and Moreland Streets—that provide ingress and egress from Seldom Seen Road and Sawmill Parkway to the privately-owned lots within the Golf Village Community, including the Hotel Property. Ver. Compl. ¶ 31; ECF No. 1. The eastern side of Sheridan Street as well as the northern and western sides of Moreland Street were constructed on the Hotel Property. *Id*. at ¶ 38–39.

In May 2010, Golf Village transferred Lot 3155 to the City through a Limited Warranty Deed. *Id*. at ¶ 40. It is undisputed, however, that Golf Village did not then, nor has it ever, granted Defendants an access easement over the Hotel Property or Sheridan and Moreland Streets for Defendants to access the Park Property. Mot. 1–2, ECF No. 2; Tr. 5, (counsel on behalf of Defendants stating "We admit, all [cards] face up, Your Honor, it was not put in the easement, it was not put in the plat, it was not put in the deed."); Tr. 9, ECF No. 25 (counsel on behalf of Defendants stating "[a]gain, we freely admit there is not an easement referenced in the deed nor the plat . . . .").

On June 22, 2017, Defendant Betz, the City's Zoning Administrator, contacted Golf Village on behalf of the City to request an ingress/egress easement from Seldom Seen Road over Sheridan Street and the Hotel Property to create an entrance to the Park Property. Ver. Compl. at ¶ 44, ECF No. 1. Golf Village did not grant the request. *Id.* at ¶ 45.

The City revised and finalized its construction plans for the Park ("Construction Plans") in early 2018. The Title Sheet of the Construction Plans states the following in bold, capitalized font: "Approval of these plans is contingent upon the City securing an access easement to the park from Seldom Seen Road along Sheridan Street from the property owner." Ex. A at 1, ECF No. 1-1. The Title Sheet was executed by Defendants on February 9, 2018. *Id.* It is undisputed that the City approved the Construction Plans without securing an access easement from Golf Village to use the Hotel Property or to use Sheridan and Moreland Streets. Tr. 5, 9, ECF No. 25.

On March 14, 2018, despite not having secured an easement, the City informed its contractor that the City had "made arrangements" to use Golf Village's Hotel Property and Sheridan Street. Ver. Compl. ¶ 48, ECF No. 1; Ex. H, ECF No. 1-8. Shortly thereafter, in April 2018, the City and/or its agents destroyed the curb along the east side of Sheridan Street, built a construction entrance, and began using a portion of Golf Village's Hotel Property to access the Park Property. Ver. Compl. ¶ 52, ECF No. 1. Plaintiffs allege that this was done with no advance notice to Golf Village and without authorization.

Plaintiffs allege that the City will continue to enter and use Golf Village's Property if not enjoined. They further insist that the Construction Plans establish that, if not enjoined, the City will also: (1) construct a permanent entrance to the Park over Golf Village's Hotel Property, (2) clear trees and vegetation and fill certain wetlands on the Hotel Property, (3) dig a trench across Golf Village's Hotel Property and through Sheridan Street, and (4) convert Sheridan and Moreland Streets from private roads to public streets. *Id.* at ¶ 55–60.

On April 19, 2018, Golf Village contacted the City and requested that Defendants cease and desist their activities on Golf Village's Hotel Property. *See* Miller Decl., Exhibit A ¶ 3, ECF No. 2-1. The City responded, insisting that verbal representations and preliminary planning documents grant authorization allowing entry onto Plaintiffs' Property without an access easement. *Id.* at ¶ 4. Plaintiffs then filed this action seeking injunctive relief on April 23, 2018.

On May 2, 2018, this Court held an initial hearing on Plaintiffs' request for a TRO. Following the hearing, the parties agreed to a consent injunction order to be put in place for sixty days. Order, ECF No. 20; Order, ECF No. 22. Following a telephone status conference held before this Court on July 5, 2018, the parties agreed to extend the consent injunction for an additional thirty days. Order, ECF No. 27. On July 31, 2018, the parties filed a joint status report indicating, at bottom, that the parties have not and will not be able to resolve this dispute. ECF

No. 28. Therefore, the Court will proceed to resolve Plaintiffs' Motion for preliminary injunctive relief on the merits.[1]

## II.    STANDARD OF REVIEW

The Court considers four factors when determining whether to grant a request for a preliminary injunction: (1) whether the movant has established a substantial probability of success on the merits; (2) whether the movant would suffer irreparable harm in the absence of an injunction; (3) whether an injunction would substantially harm third parties; and (4) whether an injunction would serve the public interest. *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010). The factors are not prerequisites; rather, they must be balanced. *Capobianco, D.C. v. Summers*, 377 F.3d 559, 561 (6th Cir. 2004). For instance, "a strong showing of irreparable harm, decidedly outweighing harm to the defendant, may justify an injunction even where the movant cannot make a strong showing of likelihood of success on the merits, as long as the plaintiff can show serious questions going to the merits of the suit." *Worthington Foods, Inc. v. Kellogg Co.*, 732 F. Supp. 1417, 1427 (S.D. Ohio 1990) (citing *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1270 (6th Cir. 1985) and *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)).

Even so, "a district court is not required to make specific findings concerning each of the four factors . . . if fewer factors are dispositive of the

---

[1] Given the procedural history of the case, the Court finds that Plaintiffs' request for a TRO is moot, and thus the request is denied.

issue." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003) (citing *In re DeLorean Motor Co.*, 755 F.2d at 1228) (abrogated in part on other grounds); *see also American Imaging Servs., Inc. v. Eagle–Picher Indus., Inc.*, 963 F.2d 855, 862 (6th Cir. 1992) (stating that the district court is not required to make findings on factors that are not dispositive with respect to the issuance of a preliminary injunction). Further, notwithstanding the requirement to balance the factors, the likelihood of success and irreparable harm factors predominate. *Smith v. Husted*, No. 2:16-CV-212, 2016 WL 10321579, at *3 (S.D. Ohio Mar. 11, 2016) (Smith, J.). Moreover, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Med. Exam'rs,* 225 F.3d 620, 625 (6th Cir. 2000); *see also Michigan State AFLCIO v. Miller,* 103 F.3d 1240, 1249 (6th Cir. 1997) ("While, as a general matter, none of these four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed.").

Similarly, before the Court may issue a permanent injunction, a plaintiff must demonstrate the following:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006). In addition, unlike a preliminary injunction, the standard for a permanent injunction requires that a plaintiff show "actual success" on the merits, rather than a mere *likelihood* of success. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n. 12 (1987) (internal citations omitted).

The decision whether to grant injunctive relief falls within the sound discretion of the district court. *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982) (discussing the district court's discretion in granting preliminary injunctive relief); *see also eBay Inc.*, 547 U.S. at 391 ("The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court[.]").

## III. ANALYSIS

### A. Preliminary Injunction

#### 1. Substantial Likelihood of Success on the Merits

Plaintiffs move for injunctive relief on three bases. They claim: (1) Defendants' use and destruction of the Hotel Property and Sheridan and Moreland Streets violates Golf Village's right against the unreasonable seizure of private property under the Fourth Amendment; (2) Defendants interfered with Golf Village's private property without providing Golf Village notice and an opportunity to be heard, violating Plaintiffs' right to procedural due process under the Fifth and Fourteenth Amendments; and (3) Defendants' entry onto Golf

Village's private property without authorization constitutes trespass as a matter of law. Mot. 10–13, ECF No. 2. The Court will address the likelihood of success of each claim *seriatim*.

### a. Plaintiffs' Fourth Amendment Claim

The Fourth Amendment, made applicable to the states by the Fourteenth Amendment, *Ker v. California,* 374 U.S. 23, 30 (1963), provides in relevant part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." A "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen,* 466 U.S. 109, 113 (1984); *Soldal v. Cook Cty.,* 506 U.S. 56, 61 (1992). The Fourth Amendment's protections apply in both the criminal and civil context. *Soldal,* 506 U.S. at 67. The fundamental question under the Fourth Amendment is one of "reasonableness," a question decided by a "careful balancing" of the public and private interests at stake. *Soldal,* 506 U.S. at 71.

The Fourth Amendment's protections can extend to real property, *see United States v. James Daniel Good Real Property,* 510 U.S. 43, 52 (1993), but these protections are not without limit. Indeed, while the Supreme Court has said that the Fourth Amendment's protections extend to the home and its curtilage, defined as the area "immediately surrounding and associated with the home," *Fla. v. Jardines*, 569 U.S. 1, 6 (2013) (quoting *Oliver v. United States,* 466 U.S. 170, 180 (1984)), an "open field" is not a protected area under the Fourth

Amendment and thus the government's physical intrusion on such an area "is of no Fourth Amendment significance." *United States v. Jones*, 565 U.S. 400, 411 (2012). The term "open fields" includes "any unoccupied or undeveloped area outside of the curtilage," even if the area is neither "open" nor a "field" as those terms are used in common parlance. *Oliver*, 466 U.S. at 180 n. 11; *see also Widgren v. Maple Grove Twp.*, 429 F.3d 575, 579–80 (6th Cir. 2005) (discussing and applying the "open fields" doctrine).

The Property at issue in this case is neither Plaintiffs' home, nor curtilage; it is presently undeveloped private property that Plaintiffs seek to develop for commercial use. It appears likely that the Property is an "open field," and therefore is entitled to no Fourth Amendment protection at all.

Plaintiffs rely on two cases in an attempt to show that the Fourth Amendment's protections extend to their Property: the Sixth Circuit's decision in *Bond v. Cox* and the Fourth Circuit's decision in *Presley v. City of Charlottesville*. However, both cases are inapposite.

In *Bonds*, a property owner brought an action under 42 U.S.C. § 1983 against police officers as the result of the officers' execution of a search warrant at her home. 20 F.3d 697 (6th Cir. 1994). While executing the warrant, the officers broke doors, mutilated vinyl siding, cracked the commode, put holes in walls, broke dishes, and trampled plaintiff's personal belongings. *Id.* at 702. In light of those facts, the Sixth Circuit found that Bonds' property was "seized" within the meaning of the Fourth Amendment because the damage to her home

rose to the level of "a 'meaningful interference' with her possessory interests." *Id.* at 701–02 (citing *Jacobsen*, 466 U.S. at 124–25). Unlike the present case, however, Bonds involved the plaintiff's *home.* The home is an area explicitly protected by the Fourth Amendment, and to which there is no question that the Fourth Amendment's protections apply. Such a distinction is consequential in Fourth Amendment jurisprudence.

Likewise, *Presley* involved the plaintiff's home and surrounding curtilage, and is therefore distinguishable. There, plaintiff lived on a parcel that encompassed less than an acre of land along the river. 464 F.3d 480, 482 (4th Cir. 2006). Without the plaintiff's consent, the defendant, the City of Charlottesville, began publicizing and distributing a map that showed a public trail crossing a portion of plaintiff's property. *Id.* "Relying on this map, members of the public began travelling across [the plaintiff's] property, leaving behind trash, damaging the vegetation, and sometimes even setting up overnight camp sites." *Id.* Rather than trying to correct the map, the city asked the plaintiff for an easement. When plaintiff denied the request, the city criminally prosecuted her for taking measures, such as installing a fence, to protect her property. *Id.* at 483. The plaintiff then sued the city, alleging in part that her property had been seized in violation of the Fourth Amendment. *Id.* at 483.

In reversing the district court's dismissal, the Fourth Circuit held that the plaintiff had stated a valid Fourth Amendment claim. *Id.* at 487–89. Crucial to the Fourth Circuit's analysis, however, was the court's inference that the seizure

occurred within the curtilage of the plaintiff's home. *Id.* at 484 n. 3 (noting that the district court made no finding as to the extent of the curtilage surrounding plaintiff's home and that the defendants did not contest the matter). In so finding, the court directly stated its recognition "that the Fourth Amendment may not protect real property other than a house and its surrounding curtilage," citing the Supreme Court's decisions in *Oliver* and *James Daniel Good Real Property*, and explicitly declined to resolve the question in its opinion. *Id.* As in *Bonds*, *Presley* involved real property to which the Fourth Amendment's protections have been explicitly extended.

By contrast, Plaintiffs have not identified a single case extending the Fourth Amendment's protections to the kind of property at issue in this matter: undeveloped, commercial property. Indeed, the case law indicates that such an extension may not exist. *Cf. Costas-Elena v. Municipality of San Juan*, 714 F. Supp. 2d 263, 269–71 (D.P.R. 2010) (noting that "the First Circuit has not dealt directly with the reasonableness of a property seizure in a civil context like the one before us," where the property at issue was 1250 square feet at the corner of plaintiffs' real property on which debris landed after the municipality cut down a tree on plaintiffs' neighbors land, and that "the dearth of such claims is but one indicator of how ill-suited the Fourth Amendment is to the situation at bar").

Given this, the Court finds that Plaintiffs' Fourth Amendment claim is not likely to succeed on the merits.

### b. Plaintiffs' Procedural Due Process Claim

In general, to establish a procedural due process violation under 42 U.S.C. § 1983, a plaintiff must demonstrate three elements: (1) that it had a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) that it was deprived of that protected interest within the meaning of the Due Process Clause; and (3) that the state did not afford it adequate procedural rights before depriving it of its protected interest. *See Med. Corp., Inc. v. City of Lima,* 296 F.3d 404, 409 (6th Cir. 2002).

A plaintiff may prevail on a procedural due process claim if it: (1) demonstrates that it was deprived of a liberty or property interest as a result of an "established state procedure" which itself violates procedural due process rights; or (2) establishes that it was deprived of a liberty or property interest "pursuant to a random and unauthorized act" and available state remedies would not adequately compensate it for the loss that it suffered. *See Wedgewood Ltd. P'ship I v. Twp. of Liberty, Ohio*, 610 F.3d 340, 349–50 (6th Cir. 2010); *Mertik v. Blalock,* 983 F.2d 1353, 1365 (6th Cir. 1993); *Macene v. MJW, Inc.,* 951 F.2d 700, 706 (6th Cir. 1991).

Plaintiffs argue that they were deprived of their liberty and property interests pursuant to a random and unauthorized act and that any post-deprivation state law remedies are inadequate. Specifically, Plaintiffs assert that Defendants "randomly" took possession of their Hotel Property and are using their private roads (Sheridan and Moreland Streets) without any process or legal

authority to do so. Mot. 12, ECF No. 2. In their Reply, Plaintiffs also contend,
without elaboration, that state law remedies are inadequate because they would
be unable to "restore Sheridan and Moreland Streets and the Hotel Property to
their pre-deprivation condition." Reply 7, ECF No. 17. Defendants, on the other
hand, insist that the parties had "long agreed" that access to the Park Property
would be from Sheridan and Moreland Streets, and that either a state trespass
action or an inverse condemnation action could adequately compensate plaintiffs
for any loss suffered. Def. Resp. 12, ECF No. 16.

Here, Plaintiffs' Verified Complaint is devoid of any allegations regarding
the adequacy of state remedies to redress Defendants' alleged wrongs. In fact,
Plaintiffs' first discussion of state remedies at all is in their Reply brief. See Reply
7, ECF No. 17. The absence of such allegations is fatal to their procedural due
process claim. See, e.g., Jefferson v. Jefferson Cty. Pub. Sch. Sys., 360 F.3d
583, 588 (6th Cir. 2004) ("Plaintiff may not seek relief under Section 1983 without
first pleading and proving the inadequacy of state or administrative processes
and remedies to redress her due process violations."); Farhat v. Jopke, 370 F.3d
580, 597 (6th Cir. 2004) ("[Appellant] has failed to allege and prove the
inadequacy of state remedies, which failure is fatal to his procedural due process
claim."); Allen v. Louisville City Police Dep't, 972 F.2d 346 (6th Cir. 1992)
("Where a plaintiff alleges the deprivation of a property or liberty interest without
procedural due process of law, then the plaintiff must plead that no adequate
state remedies exist before we will consider the claim.").

Therefore, because Plaintiffs have not sufficiently pled that available state remedies are inadequate, the Court finds that they have not shown a substantial likelihood of success on the merits for their due process claim.[2]

### c. Plaintiffs' Trespass Claim

Plaintiffs' remaining basis for injunctive relief is a state law claim of trespass. Under Ohio law, trespass is "'the unlawful entry upon the property of another.'" *Davis v. Widrnan*, 184 Ohio App.3d 705, 718 (Ohio Ct. App. 2009) (quoting *Chance v. BP Chems.*, Inc., 77 Ohio St.3d 17, 24 (Ohio 1996)). As the Supreme Court of Ohio has stated, "A common-law tort in trespass upon real property occurs when a person, without authority or privilege, physically invades or unlawfully enters the private premises of another whereby damages directly ensue . . . ." *Apel v. Katz*, 83 Ohio St.3d 11, 19, 697 N.E.2d 600 (Ohio 1998) (quotation marks omitted). The elements necessary to state a cause of action for trespass are: (1) an unauthorized intentional act, and (2) entry upon land in the possession of another. *Brown v. Scioto Cty. Bd. of Commissioners*, 87 Ohio App.3d 704, 716, 622 N.E.2d 1153 (Ohio Ct. App. 1993).

Here, Defendants do not dispute that they entered onto land in Plaintiffs' possession. *See generally* Def. Resp., ECF No. 16; *see also* Tr. 5, 9, ECF No.

---

[2] The Court also notes that courts have found inverse condemnation proceedings to be an adequate state remedy in similar cases under Ohio law. *See, e.g., Harris v. City of Akron*, 20 F.3d 1396, 1400 (6th Cir. 1994); *DeFranco v. Weisdack*, No. 1:12-CV-1387, 2012 WL 5451630, at *4 (N.D. Ohio Nov. 7, 2012). Therefore, even if Plaintiffs had pled the inadequacy of state remedies, it appears that their procedural due process claim still would be unlikely to succeed on the merits.

25. The question, then, in determining whether Plaintiffs have a substantial likelihood of success on the merits is whether or not Defendants' entry was "an unauthorized intentional act." *Brown*, 87 Ohio App.3d at 716.

Defendants argue that Plaintiffs' trespass claim is not likely to succeed because the City "was and still is" authorized by Golf Village to use the Hotel Property and Sheridan Street. Def. Resp. 13, ECF No. 16. More specifically, Defendants assert that the parties previously agreed that Defendants' access to the Park Property would be "off Sheridan and Moreland Streets" but that "there was a mutual mistake in the platting and conveying process such that access was not expressly included." *Id*.

At the May 2, 2018, hearing before this Court, and in their briefing, Defendants admitted that neither the Limited Warranty Deed nor the Final Plat grant them access to the Park Property via Sheridan and Moreland Streets or the Hotel Property. Tr. 5, 9, ECF No. 25; Def. Resp. 9, ECF No. 16. In addition, long before the hearing, Defendant Betz recognized that an access easement was necessary in June 2017. Ex. G, ECF No. 1-7. Moreover, as late as February 9, 2018, on the Title Sheet of the Construction Plans, Defendants acknowledged the need for an easement from Plaintiffs before they could use Sheridan Street to access the Park Property. Ex. A, ECF No. 1-1. In short, there is a strong likelihood that Defendants are and were aware that they were not authorized to enter or use Plaintiffs' Hotel Property or their private roads.

Even so, Defendants assert that the parties intended to authorize their use

of the Hotel Property and private roads to access the Park Property, but that this

intent was not memorialized in either the Limited Warranty Deed or the Final Plat

due to a "mutual mistake." The existence of this mutual mistake, Defendants

claim, means that "the City had the right to access its public park property as it

did[.]" Def. Resp. 9, ECF No. 16. This assertion is incorrect.

A mutual mistake, even if one could be demonstrated, does not amount to

consent or authorization to enter or use the property of another. To the contrary,

the proper mechanism to rectify a mutual mistake under Ohio contract law is to

seek rescission or reformation of the contract. *See, e.g.*, *Reilley v. Richards*, 69

Ohio St. 3d 352, 352 (Ohio 1994); *Shear v. West American Ins. Co.*, 11 Ohio St.

3d 162, 164 (Ohio 1984); *ArcelorMittal Cleveland, Inc. v. Jewell Coke Co., L.P.*,

750 F. Supp. 2d 839, 847 (N.D. Ohio 2010). It is undisputed that Defendants did

not pursue either rescission or reformation here.

In light of these facts, the Court finds that Plaintiffs have a substantial

likelihood of success on the merits of their trespass claim under Ohio law.

### 2. Irreparable Harm

In general, "[p]laintiff's harm from the denial of a preliminary injunction is

irreparable if it is not fully compensable by monetary damages." *Overstreet v.*

*Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (citing

*Basicomputer Corp. v. Scott,* 973 F.2d 507, 511 (6th Cir. 1992). In this case,

Plaintiffs' argument for irreparable harm centers, in part, around their

constitutional claims: they insist that irreparable harm is presumed where there is a constitutional deprivation. Mot. 15, ECF No. 2; Reply 12, ECF No. 17.

Plaintiffs are correct that courts have held "that a plaintiff can demonstrate that a denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights." *Overstreet*, 305 F.3d at 578; *see also Am. Civil Liberties Union of Kentucky v. McCreary Cty., Kentucky*, 354 F.3d 438, 445 (6th Cir. 2003). Where a court finds that a plaintiff is unlikely to succeed on the merits of its constitutional claim, however, the "argument that he is entitled to a presumption of irreparable harm based on the alleged constitutional violation is without merit." *Overstreet*, 305 F.3d at 578. In such cases, courts must look elsewhere for irreparable harm. *See id.* at 578–79. This is the case here, because the Court has found that neither of Plaintiffs' constitutional claims are likely to succeed on the merits.

As an alternative, Plaintiffs argue that "the deprivation of an interest in real property constitutes irreparable harm." Mot. 15, ECF No. 2 (quoting *Third Church of Christ, Scientist, of New York City v. City of New York*, 617 F. Supp. 2d 201, 215 (S.D.N.Y. 2008)). In making this argument, though, Plaintiffs have cited to only one case from this Circuit, *Baker v. People's Choice Home Loan, Inc.*, No. 3:10-CV-327, 2010 WL 3447614 (S.D. Ohio Aug. 27, 2010). Plaintiffs cite *Baker* as support for the broad proposition that a finding of irreparable harm is appropriate where real property is involved because of the "willingness of equity courts to treat particular pieces of real property as unique." *Baker*, 2010

WL 3447614 at *4. The property at issue in *Baker*, however, was the plaintiff's residence, a factor noted in the court's reasoning. Other courts in this Circuit, in contrast, have analyzed irreparable harm differently where the property involved was commercial real estate. *See Mount Clemens Inv. Grp., L.L.C. v. Borman's Inc.*, No. 10-12679, 2010 WL 3998095, at *5 (E.D. Mich. Oct. 12, 2010) ("Plaintiff's argument that the Shopping Center's status as real property automatically means that its loss would result in irreparable harm also fails. Plaintiff's Shopping Center is commercial real estate used as an investment property. Plaintiff can recoup its investment loss through money damages.").

Outside of this Circuit, a number of courts reviewing this issue have found that a continuing trespass or occupation of real property can, in and of itself, constitute irreparable harm, but the law is not uniform. *Compare United States v. Wilson*, No. 3:09-CV-166-ECR-RAM, 2010 WL 1849338, at *2 (D. Nev. May 6, 2010) ("[Defendant's] continued occupation of the property would cause Plaintiff irreparable harm in the absence of injunctive relief: real property is unique, and [defendant's] continued occupation of the subject property would cause the [plaintiffs] a harm that cannot be compensated with money alone."); *7-Eleven, Inc. v. Khan*, 977 F. Supp. 2d 214, 234 (E.D.N.Y. 2013) ("As for the adequacy of potential remedies, it is well-settled that unauthorized interference with a real property interest constitutes irreparable harm as a matter of law, given that a piece of property is considered to be a unique commodity for which a monetary remedy for injury is an inherently inadequate substitute.") (quotation

marks omitted); *2660 Woodley Rd. Joint Venture v. ITT Sheraton Corp.*, No. CIV. A. 97-450 JJF, 1998 WL 1469541, at *6 (D. Del. Feb. 4, 1998) (if a continuing trespass was found, the landowners were "clearly suffer[ing] irreparable harm from such deprivations of possession and control which cannot easily be established in dollars."); *with Gordon v. New England Cent. R.R., Inc.*, No. 2:17-CV-154, 2017 WL 6327105, at *12 (D. Vt. Dec. 8, 2017) ("Plaintiffs' contention that 'unauthorized interference with a real property interest constitutes irreparable harm as a matter of law,' . . . does not hold true where the trespass neither extinguishes the property's value, nor prohibits its use entirely.") (collecting cases)) *and Mount Clemens Inv. Grp., L.L.C.*, No. 10-12679, 2010 WL 3998095, at *5 (finding that, plaintiff could not show irreparable harm where the real property at issue was commercial real estate and thus it could recoup its losses through money damages).

Here, Plaintiffs allege that Defendants' use of their private roads and the Hotel Property will continue to escalate if not enjoined. They point to Defendants' Construction Plans to demonstrate that Defendants intend to: (1) construct a permanent entrance to the Park over Golf Village's Hotel Property; (2) clear trees and vegetation and fill certain wetlands on the Hotel Property; (3) dig a trench across Golf Village's Hotel Property and through Sheridan Street; and (4) convert Sheridan and Moreland Streets from private roads to public streets. *Id*. at ¶ 55–60. In light of the continuing and permanent nature of Defendants' planned use of Plaintiffs' property, and the unique nature of real property, the Court finds that

the facts and equities here warrant finding that Plaintiffs' have demonstrated irreparable harm from Defendants' use and possession of their property.

### 3. Harm to Third Parties

The Court finds that the issuance of an injunction will not cause harm to third parties. Defendants argue that the City, its contractors, and its citizens will be harmed by the delay to construction of the park and increased construction costs. However, Defendants have admitted that alternative access to the Park Property exists. Further, there are other mechanisms that would allow Defendants to legally access Plaintiffs' property, which Defendants have also admitted, such as pursuing a quick-take action. For these reasons, the Court finds that this factor weighs in Plaintiffs' favor.

### 4. Public Interest

The final question is whether the public interest would be served by issuing the injunction. Plaintiffs' arguments focus on the public's interest in preventing violations of constitutional rights. Such an argument is unavailing here since Plaintiffs have not demonstrated a substantial likelihood of success on either of their constitutional claims.

Even if Plaintiffs had argued, for example, that an injunction would serve the public interest in allowing private companies to protect their private property from trespass, at least one court in this district has found that such an interest is private, not public. See Easterling v. Cassano's Inc., No. 3:15-CV-032, 2015 WL 1396462, at *4 (S.D. Ohio Mar. 25, 2015) ("Defendants assert that the public

interest lies in the ability of private companies to protect its private property from trespass by individuals who are verbally abusive to its employees and disruptive to its customers. The Court sees this as a private interest, as opposed to a public interest. Thus, this factor is neutral."). On the other hand, courts have recognized that protecting private property rights can be a legitimate state interest, albeit in a different context. *See Lexington H-L Servs., Inc. v. Lexington-Fayette Urban Cty. Gov't*, No. 5:17-CV-154-KKC, 2018 WL 3489235, at \*3 (E.D. Ky. July 19, 2018) ("The City's interest in reducing blight and litter and protecting private property are significant."). Moreover, as both parties point out, the Sixth Circuit has held that "the public interest lies in promoting public confidence in the integrity of local government. . . ." *Overstreet*, 305 F.3d at 579. Here, though, where the City seeks to build a park for the public's benefit, but where it is likely that the City has trespassed on private property in order to do so, this public interest arguably cuts both ways. Thus, the Court finds this factor to be neutral.

### 5. Conclusion on Plaintiffs' Request for a Preliminary Injunction

For the reasons stated above, the Court finds that the equities weigh in favor of granting Plaintiffs' request for a preliminary injunction.

### B. Permanent Injunction

In addition to requesting a TRO and preliminary injunction, Plaintiffs also request a permanent injunction against Defendants. However, Plaintiffs have not shown "actual success" on the merits for any of their claims, nor could they do so at this stage of the proceedings. Such a showing is necessary to be entitled to

permanent injunctive relief.  *See, e.g., Amoco Prod. Co.*, 480 U.S. at 546 n. 12.

Plaintiffs' request for a permanent injunction is therefore **DENIED WITHOUT**

**PREJUDICE.**

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion, ECF No. 2, is **GRANTED IN**

**PART and DENIED IN PART**.  Defendants are hereby preliminarily enjoined

from further use, occupation, or possession of Plaintiffs' Hotel Property and

Sheridan and Moreland Streets until such time as this matter is resolved on the

merits, Defendants provide the Court with grounds for relief from this Order, or a

permanent injunction is granted.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**